RILEY v. GRANT *et al.*

1. Where one wrote a landowner, asking him the price of land, and stating it was a good time to sell it, and the owner replied, stating the price, and that a third party claimed he could sell it the previous fall but had not sold it, and, if the one addressed could sell it or rent it, the owner would do what would be right for him, such correspondence

did not give the one addressed authority to bind the owner by a contract of sale.

2. After the receipt of the letter, the one addressed executed a contract for the sale of the land, and, on being informed of such contract, the owner wrote him he thought he had left the matter in the hands of the third party, and that he had written such third party about the sale, and that the one addressed had better see such third party, and have him make out a deed for the owner to sign. Subsequently a deed was forwarded to the owner, no consultation having been had with the third party, to which the owner replied that he had received from such third party a request not to sign any deed, and that, if the third party's consent could be obtained, he would execute the deed. Held, that there was no ratification of the contract by the owner.

(Opinion filed April 7, 1903.)

Appeal from circuit court, Codington county. Hon. JULIAN BENNETT, Judge.

Action by J. D. Riley against P. B. Grant and Robert Schull to enforce specific preformance of an alleged contract to convey real property. From a judgment for plaintiff, Schull appeals. Reversed.

*C. X. Seward* and *S. B. Van Buskirk,* for appellant.

*John B. Hanten,* for respondent.

FULLER, J. In this action to enforce specific performance of a contract to convey real property plaintiff had judgment, and the defendant Schull appeals.

The authority of J. E. Wess to bind the defendant Grant by a contract of sale executed and delivered to respondent on the 17th day of May, 1899, depends upon the force and effect of certain letters offered and received in evidence. O. E. Dewey, through whom appellant, Schull, purchased the premises, was, and for more than six years prior thereto had been,

the duly authorized agent of Grant for the sale of the premises, and this contention is between respondent, whose contract was signed by Wess, on behalf of Grant, and appellant, who obtained his deed from Grant on the 26th day of June, 1899, pursuant to his prior negotiations with Dewey. It appears from the record that the following letter was written at Watertown, S. D., by Wess, and addressed to Grant at Watertown, N. Y., as early as the 15th day of November, 1898: " I am sorry I could not attend to your other farm. About the time you wrote to me we were threshing, and a few days afterwards had a snowstorm. The land was covered for a week. Dewey is round more, will be more able to sell it for you." No further correspondence is show to have taken place between the parties until the 22d day of March, 1899, when Wess wrote Grant asking for the present price of the land, and stated, in substance, that he could find a tenant for the premises, and that it was a good time to sell it if he wished to do so. To this letter, which related to two separate and distinct farms, Wess received the following answer: "Watertown, N. Y., March 27, 1899. John Wess, Watertown, South Dakota—Sir: Yours of March 22nd came to hand to day in reply would say that I think I will sell the 240 acres at 3200, three thousand two hundred; if sold at that price I don't get much for the land as the buildings and improvements costs me so much. I don't need all cash but I want enough so I know it is sold. The other 160 near Markleys about one thousand, 1000 dollars. O. E. Dewey claimed he could sell it last fall but has not sold it yet; if you can sell it or rent it let me know as soon as possible; will do what is right for your trouble. Yours Resp P. B. Grant." Without further instructions or authority, Wess executed the contract

here relied upon, and the next day wrote Mr. Grant as follows: "Dear Sir: After I sent my letter yesterday I sold your farm near Markleys old place the southwest quarter Section 22 R. 116-52 nine hundred and fifty dollars if you call that sold send on your papers to me you will have to furnish the Abstract and clear title." Responding to the foregoing letter, under date of May 22d, 1899, Mr. Grant wrote the following letter: "J. E. Wess, Watertown, S. D.—Sir: I have just received your letter about selling the farm for 950. I thought I gave you the price of 1000 and was to give you a certain sum; I think I told you I had left it in O. E. Dewey's hands to sell last fall or early this spring; he was to sell it and give me a certain sun I think you sold it for enough so you and him will get profit enough I have written to Dewey that you have sold the place and you say he wants a clear title that is taxes paid last year I got a Sheriff's Deed I think you had better see Dewey if he is there and see what the taxes are and have him make out a deed and send it to me to sign." On the 5th day of June thereafter, Wess, without consulting Mr. Dewey in any manner, forwarded a deed to be executed by Grant, together with a letter, in which he stated that Mr. Dewey was a friend of his and that they would have no trouble in fixing up the commission. In acknowledging the receipt of this letter June 8, 1899, Mr. Grant says: "I have got two letters from Dewey requesting me not to sign any deed at present. Also he has leased it for this spring crop for the breaking etc. with the privilege of the crop next year if not sold before. I told you if you could arrange with Dewey so it would be satisfactory I was willing to take for my claim 850 Doll. with interest on the same since Aug 1, 1898, also one year taxes at 6 per ct. you to divide the

profit's. You can see what the taxes are then you can tell what you will both get. You write to Dewey and get his consent and I will sign deed subject to his lease."

On the 17th day of May 1899, when Wess contracted to sell the land to respondent for $950, his only authority to act is contained in the letter of the preceding March, in which Grant referred to his agent, Dewey, and stated that he thought he would sell for about $1,000, and asked Wess to let him know as soon as possible if he could sell or rent the property. In his next letter he refers to the fact that $1,000 was the price mentioned, and that Dewey was his agent, and says, among other things, "I think you had better see Dewey if he is there and see what the taxes are and have him make out a deed and send it to me to sign," Mr. Wess was sufficiently advised that Dewey must be consulted before the consummation of the sale, and, had the entire correspondence taken place prior to the date of the contract upon which respondent relies, it is not of that clear, convincing, and unconditional character that justifies specific performance. Clearly, Wess entered into the written contract with respondent without authority, and Grant's subsequent letters fall susceptibly short of unconditional ratification on his part. When Wess made the contract with respondent, appellant was in actual possession under a valid lease executed by Dewey, on the part of Mr. Grant, and all parties were advised of the authority of Dewey to lease or sell the property. All negotiations between Wess and Grant recognized the authorized agency of Dewey, and his right to a portion of the commission when a sale was made; and in response to the letter of Wess containing the first statement of particulars, together with a deed for Grant's signature, the

latter declined the proposition, and refused to execute the deed unless the consent and acquiescence of Dewey was obtained. Concerning this Mr. Wess wrote Grant in part as follows: "I am sorry you told me to sell your farm place near Markleys when you had it in Dewey's hands. * * * I don't think it is my duty to see Dewey and divide profits. If you won't let me have the sale of that place don't let anyone have the other only myself." This terminated all negotiations between Grant and Wess, and within a few days thereafter appellant, Schull, who was still in actual possession under his lease, purchased the premises for a valuable consideration.

The testimony is insufficient to sustain the conclusion that Wess was authorized to make the contract in suit, and the negotiations never culminated in such an unconditional agreement that justifies a court of equity in decreeing specific performance. The view we have taken renders unnecessary the consideration of other points argued by counsel.

The judgment appealed from is reversed as to Schull, and the case remanded for further proceedings, not at variance herewith.